**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | | |
|---|---|---|
| **TRACY SEAWELL,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:10cv00039 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Tracy Seawell, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2010). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*,
-1-

829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Seawell protectively filed her applications for DIB and SSI on April 19, 2006, alleging disability as of June 1, 2005, due to degenerative disc disease, status post back surgery and a limited reading ability. (Record, ("R."), at 28, 119-27, 146, 176.) The claims were denied initially and on reconsideration. (R. at 75-77, 80-82, 87, 88-89, 91-94, 96-97.) Seawell then requested a hearing before an administrative law judge, ("ALJ"). (R. at 98.) The hearing was held on September 18, 2007, at which Seawell was represented by counsel. (R. at 38-70.)

By decision dated October 25, 2007, the ALJ denied Seawell's claims. (R. at 11-24.) The ALJ found that Seawell met the nondisability insured status requirements of the Act for DIB purposes through June 30, 2006. (R. at 16.) The ALJ also found that Seawell had not engaged in substantial gainful activity since June 1, 2005, the alleged onset date. (R. at 16.) The ALJ determined that the medical evidence established that Seawell suffered from severe impairments, including degenerative disc disease with L4-L5 surgery in June 2005, obesity and hip pain. (R. at 16-17.) However, the ALJ concluded that Seawell did not have an

impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17.) The ALJ found that Seawell had the residual functional capacity to perform light work that allowed for a sit/stand option every 30 minutes, that required no more than occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching and crawling, that did not require pushing/pulling with the lower extremities to operate foot controls, climbing ladders, ropes or scaffolds, concentrated exposure to vibrations or more than moderate exposure to heights or other workplace hazards.[1] (R. at 17-22.) Therefore, the ALJ found that Seawell was unable to perform her past relevant work as a cook, a cashier, a store laborer/loader, a packer, a companion/sitter or a housekeeper. (R. at 22.) Based on Seawell's age, her limited education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Seawell could perform, including jobs as a cashier, an assembler and a packer. (R. at 22-23.) Thus, the ALJ found that Seawell was not under a disability as defined under the Act and was not eligible for benefits. (R. at 23-24.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2010).

After the ALJ issued his decision, Seawell pursued her administrative appeals, (R. at 7), but the Appeals Council denied her request for review. (R. at 1-6.) Seawell then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§

---

[1] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2010).

404.981, 416.1481 (2010). The case is before this court on Seawell's motion for summary judgment filed January 19, 2011, and the Commissioner's motion for summary judgment filed February 17, 2011.

*II. Facts and Analysis*

Seawell was born in 1963, (R. at 119, 125), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). She completed the ninth grade,[2] and she attended some special education classes. (R. at 45.) Seawell has past work experience as a fast food cook and cashier, an assembly line laborer/packer, an equipment loader, a companion/sitter, an apartment building manager and a housekeeper. (R. at 45-49, 147.)

John Newman, a vocational expert, testified at Seawell's hearing. (R. at 61-69.) Newman classified Seawell's past work as a fast food cook as medium[3] and

---

[2] Seawell stated in her Disability Report that she completed the tenth grade. (R. at 151.) However, she testified at her hearing before the ALJ that she completed only the ninth grade. (R. at 45.) Because Seawell completed only the ninth grade, she has a "limited education," defined in the regulations as having an ability in reasoning, arithmetic and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semiskilled or skilled jobs. An individual with a seventh-grade through eleventh-grade level of formal education is deemed to have a limited education. *See* 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3) (2010).

[3] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If someone can perform medium work, she also can perform light and sedentary work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2010).

unskilled, as a fast food cashier as light and unskilled, as a loader as heavy[4] and unskilled, as a packer as light and unskilled, as a companion/personal care attendant as light to medium and unskilled and as a housekeeper as light and unskilled. (R. at 63-64.) Newman testified that a hypothetical individual of Seawell's age, education and work history who could perform light work that did not require pushing or pulling with the lower extremities, that required no more than occasional climbing of ramps and stairs, that required no climbing of ladders, ropes or scaffolds, that required no more than occasional balancing, stooping, kneeling, crouching and crawling, that did not require concentrated exposure to vibrations and that did not require even moderate exposure to hazards, such as dangerous machinery and unprotected heights, could perform jobs existing in significant numbers in the national economy, including those of a cashier, a packer, a food preparation worker, a laundry worker and a stock and order filler. (R. at 65-66.) Newman further testified that the same hypothetical individual, who also required a sit/stand option every 30 minutes, could perform the jobs of a cashier, an assembler and a packer. (R. at 66-67.) Newman testified that this same hypothetical individual, who also would be limited to lifting amounts as accommodated by sedentary work[5] and who needed a cane to stand and walk,

---

[4] Heavy work involves lifting items weighing up to 100 pounds at a time with frequent lifting or carrying of items weighing up to 50 pounds. If someone can perform heavy work, she also can perform medium, light and sedentary work. *See* 20 C.F.R. §§ 404.1567(d), 416.967(d) (2010).

[5] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required

would be precluded from working. (R. at 68-69.) Finally, Newman testified that an individual requiring unscheduled breaks to prop up her legs or to lie down would be unable to work. (R. at 67.)

In rendering his decision, the ALJ reviewed records from Carilion Neurosurgical Care; Carilion Roanoke Memorial Hospital; Carilion Internal Medicine; Carilion Bone and Joint Center; Dr. Michael Hartman, M.D., a state agency physician; E. Hugh Tenison, Ph.D., a state agency psychologist; Dr. Robert McGuffin, M.D., a state agency physician; Howard S. Leizer, Ph.D., a state agency psychologist; and Dr. Michael A. Berry, M.D. Seawell's attorney submitted additional medical records from Carilion Internal Medicine; Roanoke Athletic Club; and Carilion Roanoke Memorial Hospital to the Appeals Council.[6]

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant

---

occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2010).

[6] Because the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 1-6), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991.) However, I note that some of the evidence considered by the Appeals Council does not relate to the period on or before the date of the ALJ's decision. That being the case, this court will consider only the evidence submitted to the Appeals Council that does so relate. *See* 20 C.F.R. §§ 404.970(b), 415.1570(b) (2010) (stating that if new and material evidence is submitted to the Appeals Council, it shall be considered only insofar as it relates to the period on or before the date of the ALJ's hearing decision); *see also McGinnis v. Astrue*, 709 F. Supp. 2d 468, 471 (W.D. Va. 2010).

1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2010).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2010); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Seawell argues that the ALJ erred by failing to accord appropriate weight to the opinions of her treating physician, Dr. Michael A. Berry, M.D. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 7-13.) Seawell also argues that the ALJ erred by failing to consider the effect that her use of a cane would have on her ability to work. (Plaintiff's Brief at 13-14.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Seawell argues that the ALJ erred by failing to accord appropriate weight to the opinions of her treating physician, Dr. Berry, in making his physical residual functional capacity finding and resulting finding that she could work. (Plaintiff's Brief at 7-13.) For the following reasons, I disagree. To set the background for Seawell's arguments, I note that Dr. Zev Elias, M.D., a neurosurgeon, performed

an L5 hemilaminectomy/disckectomy on Seawell on June 2, 2005, to repair a herniated disc at the L4-L5 disc space causing severe eccentric canal stenosis. (R. at 236-37, 250-52.) MRI testing also showed that prior to this surgery, Seawell had prominent degenerative changes involving the L5-S1 disc space with a small to moderate sized foraminal/far lateral disc protrusion. (R. at 250-52.) Seawell tolerated the surgery without complication, and on July 5, 2005, she estimated an approximately 80 percent improvement in symptoms. (R. at 230.)

Seawell first notes Dr. Berry's opinion that her back impairments met the listing for disorders of the spine, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04(A). To meet § 1.04(A), a claimant must suffer from either a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis or vertebral arthritis, resulting in compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raise test. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A) (2010). It is well-settled that a claimant must prove that she meets *all* of the requirements of a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). For the following reasons, I find that substantial evidence supports the ALJ's finding that Seawell's spinal impairments do not meet the requirements of § 1.04(A).

At the outset, I note that whether a claimant meets a medical listing is an issue explicitly reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2010). Moreover, I find that while Seawell has exhibited some of

the requirements of § 1.04(A) at one time or another following her back surgery, she had not exhibited them all. As Dr. Berry noted in a September 28, 2007, assessment, Seawell has exhibited persistent sciatic pain, positive straight leg raise testing, depressed ankle jerk and decreased strength in the left leg. (R. at 588.) Nonetheless, since her back surgery in June 2005, there have been no objective findings that she has had a herniated nucleus pulposus, spinal arachnoiditis, osteoarthritis, degenerative disc disease, facet arthritis or vertebral arthritis. Although a July 10, 2005, MRI of the lumbosacral spine showed what appeared to be a fluid collection with mass effect on the thecal sac by a large collection at the L4-L5 and L5-S1 levels on the left, as well as a large disc herniation at the L5-S1 level, these had resolved at the time of a subsequent MRI on April 19, 2006. (R. 229, 241-42, 247.) This April 2006 MRI showed only disc bulges at the L4-L5 and L5-S1 levels with facet hypertrophy and lateral recess stenosis. (R. at 241-42.) Another MRI of the lumbosacral spine, taken on January 25, 2007, showed no significant change when compared with the April 2006 MRI. (R. at 531.) That being the case, I find that the ALJ properly rejected Dr. Berry's opinion that Seawell's back impairments met or equaled the medical listing for disorders of the spine.

The ALJ also accorded little weight to a physical assessment of Seawell, completed by Dr. Berry on September 28, 2007, in which he opined that she could sit for one hour at a time, stand for only five minutes at a time and that she could sit, stand and/or walk for a total of less than two hours in an eight-hour workday. (R. at 590-94.) Dr. Berry stated that Seawell must be allowed to walk around from every five to 20 minutes, noting that she would require a job that allowed for

shifting positions from sitting, standing or walking at will. (R. at 592.) He stated that Seawell would sometimes need to take unscheduled breaks during the workday. (R. at 592.) He stated that her legs would need to be elevated to chair level with prolonged sitting. (R. at 592.) Dr. Berry further stated that Seawell must use a cane or other assistive device while engaging in even occasional standing/walking. (R. at 592.) He opined that she could never lift items weighing less than 10 pounds and that she could never twist, stoop (bend), crouch/squat, climb ladders or climb stairs. (R. at 592-93.) Dr. Berry stated that Seawell would miss more than four workdays monthly. (R. at 593.)

In making his physical residual functional capacity finding, the ALJ accorded significant weight to the opinions of the state agency physicians, Dr. Michael Hartman, M.D., and Dr. Robert McGuffin, M.D., who completed Physical Residual Functional Capacity Assessments on September 29, 2006, and December 19, 2006, respectively. (R. at 427-34, 448-55.) These assessments are virtually identical, with both state agency physicians finding that Seawell could perform light work with a limited ability to push and/or pull with the lower extremities. (R. at 428, 449.) They further found that she could occasionally crawl, climb, balance, stoop, kneel and crouch. (R. at 429, 450.) They imposed no manipulative, visual or communicative limitations. (R. at 429-30, 450-51.) They further found that Seawell should avoid moderate exposure to hazards, such as heights and machinery, and Dr. McGuffin further found that she should avoid concentrated exposure to vibration. (R. at 430, 451.)

The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof of disability cases. *See McLain*, 715 F.2d at 869. The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2010). However, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. Here, I find that Dr. Berry's residual functional capacity finding is not supported by his own treatment notes or the objective medical evidence of record. For instance, despite the very restrictive limitations imposed on Seawell in Dr. Berry's assessment, his numerous treatment notes do not reflect the imposition of any restrictions on her. Moreover, diagnostic evidence following Seawell's back surgery generally showed rather minimal findings, as set out above. Further, the record shows that physical therapy following Seawell's back surgery resulted in some improvement in discomfort. (R. at 223, 226.) By October 2005, Seawell's neurosurgeon, Dr. Elias, recommended a continued home exercise program for her back, and he released her from his care to be seen on an as-needed basis. (R. at 216.) Dr. Elias placed no restrictions on Seawell at that time. In April 2006, Dr. Berry prescribed Lortab, and he added Ultracet the following month. (R. at 284, 290-91.) The record also shows that Dr. Berry's restrictive physical assessment was completed in September 2007, but that he had not

performed a physical examination of Seawell since January 2007, some nine months earlier. (R. at 532-34.) At that time, despite having a reduced range of motion of the spine, hips and pelvis secondary to pain, positive straight leg raise testing on the right and absent ankle jerk on the left, Seawell could stand on her toes and heels, as well as do a squat. (R. at 534.) She also had normal strength in both legs, and sensation to light touch was intact in both legs. (R. at 534.)

Seawell also complains of severe left hip pain, testifying that she had been informed that she likely would need to undergo a hip replacement in the future. (R. at 54.) However, as with her back impairment, the objective medical evidence regarding her hip impairment, does not support Dr. Berry's restrictive physical assessment. In August 2005, Patrick's maneuver[7] was markedly positive on the left. (R. at 223.) However, Seawell was advised to continue physical therapy, and no restrictions were imposed. (R. at 223.) X-rays taken later that month showed only mild degenerative joint disease with osteophyte formation. (R. at 222, 245.) Still later that month, Seawell continued to exhibit markedly positive Patrick's maneuver on the left, and she had exquisite tenderness over the left hip to palpation. (R. at 219.) An August 25, 2005, MRI of Seawell's left hip showed no bony abnormality of the pelvis or left hip to account for her pain. (R. at 218, 244.) When Seawell saw Dr. Elias in October 2005, she again exhibited positive Patrick's maneuver on the left and tenderness over the left hip to palpation. (R. at 216.) As noted previously, he recommended continued home exercise program for

---

[7] Patrick's test is described as follows: with the patient supine, the thigh and knee are flexed and the external malleolus is placed over the patella of the opposite leg; the knee is depressed, and if pain is produced thereby, arthritis of the hip is indicated. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 1688 (27th ed. 1988).

her back and released her from his care to be seen on an as-needed basis. (R. at 216.) When Seawell saw Dr. Thomas Shuler, M.D., an orthopaedic surgeon, in June 2006, he noted a previous diagnosis of anterior capsular labral impingement, for which little could be offered. (R. at 424.) Dr. Shuler recommended no surgical intervention at that time, instead advising Seawell to lose weight and to begin nonsteroidal anti-inflammatories, which might provide significant pain relief. (R. at 424.) Dr. Shuler further noted the possibility of a fluoro-guided steroid injection if the anti-inflammatories did not work. (R. at 424.) On December 11, 2006, Seawell reported gastrointestinal intolerance to the anti-inflammatories and proceeded with a steroid injection. (R. at 539, 567.) X-rays of the left hip and pelvis, taken in December 2006, showed mild osteoarthritic disease, unchanged from previously. (R. at 536-37.) On January 18, 2007, Seawell noted improved hip pain following the injection. (R. at 532-34.) I note that, as with her back impairment, it does not appear that any treating source placed any restrictions on Seawell due to her hip impairment.

Given the MRI and x-ray findings, the relatively conservative treatment of Seawell's back and hip impairments, including the prescription of no more than Lortab for pain, the lack of imposition of restrictions on Seawell's activities prior to Dr. Berry's September 2007 physical assessment, the length of time between Dr. Berry's physical assessment and his previous physical examination, as well as Seawell's activities, which include living alone, performing personal care, albeit with some difficulty, watching television, preparing meals daily, shopping monthly, taking public transportation and talking with others, I find that substantial

evidence supports the ALJ's weighing of the medical evidence and resulting physical residual functional capacity finding.

Seawell also argues that the ALJ erred by failing to consider her use of a cane on her ability to work. (Plaintiff's Brief at 13-14.) For the following reasons, I disagree. Seawell testified that she used a cane at all times outside of her home due to balance difficulties, her left leg giving way and to alleviate pressure from her back and left hip. (R. at 50-51, 53-54.) She stated that she could get around her house at times without the cane. (R. at 53.) Seawell further testified that Dr. Elias had not actually prescribed the cane for her, but had informed her, immediately following her back surgery in June 2005, to get a cane to help her walk. (R. at 60-61.) There are numerous notations in the record to Seawell's cane usage, but there are no opinions expressed by any medical source, with the exception of that contained in Dr. Berry's physical assessment, that Seawell's use of a cane was necessary for walking, standing, balancing or any other postural activity. There also is no mention of Seawell having balance difficulties in any treatment notes of record. In fact, in January 2007, Dr. Berry noted that Seawell could stand on her heels and toes and do a squat. (R. at 534.) There also is no mention in the record of Seawell having difficulty getting onto or off of an examination table. Further, despite Seawell's allegations of multiple falls, there are no treatment notes contained in the record showing any medical visits as a result thereof.

It is well-settled that an ALJ has a duty to analyze all of the relevant evidence, and he must sufficiently explain his findings and his rational in crediting

evidence. *See Sterling Smokeless Coal Co.*, 131 F.3d at 439-40. I find that the ALJ did so here. In particular, the ALJ specifically stated in his decision that "[c]laimant walks with a cane, but admits that no doctor has prescribed it for her. She says she started using the cane after the June 2005 surgery, but also stated she can walk around the house without it." (R. at 19.) I find that this statement by the ALJ evidences that he considered Seawell's cane usage, but found that it was not relevant to his residual functional capacity finding, as she did not use it all of the time and it was not doctor-prescribed. For all of the reasons stated above, I find that such a finding is supported by substantial evidence of record.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the Commissioner's weighing of the medical evidence;

2. Substantial evidence exists to support the Commissioner's physical residual functional capacity finding; and

3. Substantial evidence exists to support the Commissioner's finding that Seawell was not disabled under the Act and was not entitled to DIB or SSI benefits.

# RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Seawell's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

# Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: March 21, 2011.

/s/ Pamela Meade Sargent
UNITED STATES MAGISTRATE JUDGE